IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KELLY MACK LAMBETH, TDCJ #428032, | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL ACTION NO. G-08-0225 |
| NATHANIEL QUARTERMAN, Director, Texas Department of Criminal Justice - Correctional Institutions Division, | § § § § § | |
| Respondent. | § | |

## **MEMORANDUM AND ORDER**

The petitioner, Kelly Mack Lambeth, is an inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). Lambeth has filed a petition for a federal writ of habeas corpus to challenge the calculation of his sentence. After reviewing the pleadings under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court concludes that this case must be **dismissed** for reasons set forth below.

### I.     BACKGROUND

According to the petition, Lambeth was convicted of murder in cause number A-4208 upon his guilty plea in the 173rd District Court of Henderson County, Texas. As a result, Lambeth received a fifty-year prison sentence in October of 1987. Public records reflect that Lambeth is also in custody as the result of three convictions for aggravated robbery with a deadly weapon from Dallas County, in cause numbers F86-95913-Q, F85-91774-NQ, and

F85-91775-NQ, for which Lambeth received sentences of twenty-five years' imprisonment on February 10, 1986.[1]

Lambeth, who is currently in custody at the Stringfellow Unit in Rosharon, Texas, has now filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254.[2] Lambeth does not challenge any of his underlying convictions. Instead, Lambeth appears to challenge the calculation of his sentence following the revocation of his parole.[3] In particular, Lambeth complains that the State of Texas has violated or breached the "plea contract" from his murder conviction by increasing his fifty-year sentence. Lambeth explains that prison officials have denied him credit toward his sentence for time that he spent out of physical custody "while on mandatory release." These time credits, commonly known as "street-time

---

[1]  *See* Texas Department of Criminal Justice, Offender Information, at www.tdcj.state.tx.us (last visited November 4, 2008).

[2]  Because the petitioner is incarcerated within the Southern District of Texas, this Court has jurisdiction over his petition. *See Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

[3]  There are two ways in which a prisoner becomes eligible for early release from confinement under Texas law. The first is by "parole" and the second is "mandatory supervision" release. "Parole" means "the discretionary and conditional release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(6) (Vernon 2004). "Mandatory supervision" is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(5). Whereas parole is wholly discretionary, an inmate's release to mandatory supervision is required, subject to certain exceptions, when the "actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." *Id.* at § 508.147(a); *Jackson v. Johnson*, 475 F.3d 261, 263, n.1 (5th Cir. 2007). Regardless of the distinction, once an inmate is released to mandatory supervision, he is considered to be on parole. *See Jackson*, 475 F.3d at 263, n.1 (citing TEX. GOV'T CODE § 508.147(b); *Coleman v. Dretke*, 395 F.3d 216, 219, n.1 (5th Cir. 2004)).

credits," were reportedly forfeited upon his parole revocation.[4] Lambeth complains that the revocation of his parole has resulted in "illegal re-incarceration" by "non-judicial entities" and "harsher punishment than laws in effect at [the] date of [his] offense." Thus, he claims that parole officials have illegally extended his sentence in violation of the "Separation of Powers Doctrine" and the prohibition against ex post facto laws. For reasons outlined below, Lambeth's petition must be dismissed because it is without merit.

## II.  DISCUSSION

### A.  The Claims Were Rejected on State Habeas Review

In this instance, Lambeth seeks the restoration of street-time credit that was forfeited upon his parole revocation and his release from prison. According to the petition and supporting memorandum, Lambeth's claims were rejected by the Texas Court of Criminal Appeals on state habeas corpus review. Because this was an adjudication on the merits, Lambeth is not entitled to federal habeas corpus relief unless the state court's conclusion:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[4]  "Street-time credit refers to calendar time a person receives towards his sentence for days spent on parole or mandatory supervision." *Ex parte Spann*, 132 S.W.3d 390, 392 n.2 (Tex. Crim. App. 2004).

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362 (2000). Even under the liberal construction afforded to *pro se* pleadings, Lambeth falls well short of meeting this deferential standard for reasons discussed further below.

### B. Revocation of Parole and Credit for "Street Time"

Lambeth's primary complaint in this action is that, following the revocation of his parole and his return to TDCJ, prison officials refused to restore credit for the time he spent out of custody on parole (*i.e.*, street time). Thus, Lambeth argues that the State of Texas has breached or violated the plea agreement that was entered in Henderson County cause number A-4208 and that his fifty-year prison sentence for murder has been extended illegally as a result.

As an initial matter, whether Lambeth is entitled to street-time credit is a question of state law that is governed by § 508.283(c) of the Texas Government Code. Texas has already rejected Lambeth's claim that he is entitled to street-time credit under the governing state statute. It is well established that it is not the function of a federal habeas corpus court "to review a state's interpretation of its own law." *Weeks v. Scott*, 55 F.3d 1059, 1063 (citing *Moreno v. Estelle*, 717 F.2d 171, 179 (5th Cir. 1983), *cert. denied*, 466 U.S. 975 (1984)); *see also Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002) ("We will take the word of the highest court on criminal matters of Texas as to the interpretation of its law, and we do not sit to review that state's interpretation of its own law.") (quoting *Seaton v. Procunier*, 750 F.2d 366, 368 (5th Cir. 1985)). Even if Texas was mistaken, the Supreme Court has held repeatedly that "federal habeas corpus relief does not lie for errors of state law." *Estelle v.*

*McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). The federal writ of habeas corpus "shall not" issue unless a prisoner shows that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. §§ 2241(c); 2254(a). Liberally construed, Lambeth invokes the Due Process Clause of the Fourteenth Amendment, the Ex Post Facto Clause, and the federal doctrine requiring separation of powers.

### 1. Due Process

Lambeth appears to argue that he was denied street-time credit and that his sentence was increased as a result in violation of the Fourteenth Amendment Due Process Clause. Prison inmates are entitled to protection under the Due Process Clause only when an official action infringes upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Liberty interests emanate from either the Due Process Clause itself or from state law. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). A convicted prisoner does not have a constitutional right to conditional release before the expiration of a valid sentence. *See Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). To the extent that the petitioner's claim rests on the existence of an interest created by state law, it is settled that only those state-created substantive interests that "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Sandin*, 515 U.S. at 487. *See also Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995).

According to Texas law, an inmate whose supervised release was revoked before September 1, 2001 was not entitled to credit against his sentence for the street time he had accumulated following the date of his release to the date of his revocation.[5]  *See* TEX. GOV'T CODE ANN. § 508.283(b) (Vernon 2004), *formerly codified at* TEX. CRIM. PROC. CODE art. 42.18, § 14(a).  Therefore, under the statutory scheme in place prior to September 1, 2001, Texas inmates had no constitutionally protected liberty interest in retention of accumulated street-time credit.  *See Thompson v. Cockrell*, 263 F.3d 423, 426 (5th Cir. 2001).  Under the statute as amended, however, certain inmates whose supervised release was revoked on or after September 1, 2001 are entitled to some street-time credit upon their return to TDCJ.  *See* TEX. GOV'T CODE ANN. § 508.283(c) (Vernon 2004); *Ex parte Spann*, 132 S.W.3d 390, 392 (Tex. Crim. App. 2004) (observing that § 508.283(c) of the Texas Government Code and its provision awarding street-time credit applies to revocations occurring on or after September 1, 2001).

The Fifth Circuit has acknowledged the possibility that the amended statutory scheme found at § 508.283(c) may have created a protected liberty interest in the retention of street-time credit by some prisoners whose supervised release was revoked after September 1, 2001.  *See Whitley v. Dretke*, 111 F. App'x 222, 223, 2004 WL 1895117 (5th Cir. 2004) (unpublished).  Lambeth does not indicate when his parole revocation occurred.  The Court

---

[5]   In Texas, the statute in effect at the time of the parole revocation governs an inmate's eligibility for street-time credit.  *See Ex parte Noyola*, 215 S.W.3d 862, 869-70 (Tex. Crim. App. 2007) (concluding that the prisoner's "eligibility for street-time credit under Section 508.283(c) is controlled by the version of Section 508.149(a) in effect at the time of his revocation").

assumes that it was revoked after 2001, and that the amended version of § 508.283(c) applies to him in this instance. Even assuming that the amended statute creates a protected liberty interest, however, Lambeth fails to show that he is eligible for the restoration of any street-time credit under this amended statutory scheme.

Before a Texas inmate can be entitled to restoration of street-time credit under the above-referenced amended statutory scheme, he must satisfy two conditions. Under the first condition, the inmate must (a) not be serving a sentence for and (b) must not previously have been convicted of a crime described in § 508.149(a) of the Texas Government Code, which lists a variety of aggravated offenses. *See* TEX. GOV'T CODE § 508.283(b). If an offender satisfies this first condition, then he may be entitled to some street-time credit if he satisfies a second condition, which depends in turn on the amount of time remaining on the inmate's sentence at the time that the revocation warrant is issued. *See* TEX. GOV'T CODE § 508.283(c); *Spann*, 132 S.W.3d at 393 & n.6.

Significantly, Lambeth cannot satisfy the first condition for the restoration of street-time credit. As he concedes, Lambeth was convicted previously of murder. Murder is an offense listed among those in § 508.149(a), which disqualifies a parole violator from eligibility for restored street-time credit under § 508.283(c). *See* TEX. GOV'T CODE § 508.149(a)(2) (excluding persons convicted of a first degree felony under § 19.02 of the Texas Penal Code). Public records show that Lambeth also has three prior convictions for aggravated robbery with a deadly weapon. Aggravated robbery with a deadly weapon is also an offense listed among those in § 508.149(a), which disqualifies a parole violator from

eligibility for restored street-time credit under § 508.283(c). *See* TEX. GOV'T CODE § 508.149(a)(12) (excluding persons convicted of a first degree felony under § 29.03 of the Texas Penal Code); *see also Ex parte Maiorka*, Writ No. 13369-02, 2006 WL 826079 (Tex. Crim. App. 2006) (unpublished) (holding that an applicant previously convicted of aggravated robbery is not entitled to street-time credit or to the restoration of street-time credit under Texas law). Thus, Lambeth fails to show that he fits within the category of inmates eligible for restoration of street-time credit under Texas law.[6] *See* TEX. GOV'T CODE § 508.283(b) ("If the parole . . . of a person described by § 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released."). Under these circumstances, Lambeth cannot show that he was deprived of due process when he was denied street-time credit following the revocation of his parole.

    **2.**    **Ex Post Facto**

Referencing a new condition that required electronic monitoring, Lambeth contends further that officials revoked his parole in violation of the prohibition against ex post facto laws. To constitute a violation of the Ex Post Facto Clause, a law "must be both retroactive

---

[6] The second prerequisite for street-time credit, which is not at issue here, requires that the "remaining portion" of the offender's sentence be less than the amount of time the offender has spent out of custody on parole or mandatory supervision. *See Spann*, 132 S.W.3d at 392-393, 394-395, 396. The "remaining portion" of the sentence for purposes of § 508.283(c) is calculated as the number of days of the sentence remaining as of the offender's date of release to parole less the number of days the offender spent on parole. *See id.* at 395. Finally, under the express terms of the statute, the amount of the time spent on parole is deemed to end on the date the revocation warrant issues. TEX. GOV'T CODE § 508.283(c); *Spann*, 132 S.W.3d at 393 & n.6. Because the petitioner does not satisfy the first prerequisite, there is no need to calculate the remaining portion of his sentence.

and to a prisoner's detriment." *Hallmark v. Johnson*, 118 F.3d 1073, 1077-78 (5th Cir. 1997). A law is retroactive if it applies to events occurring before its enactment. *Lynce v. Mathis*, 519 U.S. 433, 441 (1997). A law is to the prisoner's detriment if it creates a "sufficient risk of increasing the punishment attached to the defendant's crimes." *McCall v. Dretke*, 390 F.3d 358, 363 (5th Cir.2004) (citations and quotation omitted). Where a statute applies retroactively, the existence of an ex post facto violation depends on whether the statute constitutes additional criminal punishment for the crimes previously committed. *Kansas v. Hendricks*, 521 U.S. 346, 371 (1997).

Lambeth complains that, while on parole, he was required to comply with the so-called "Electronic Monitor Law," codified at § 508.315 of the Texas Government Code,[7] which was not in effect in 1985 when he committed the murder that resulted in his fifty-year prison sentence. The Fifth Circuit has rejected claims by Texas prisoners who object to changes in parole laws which add conditions such as electronic monitoring, urinalysis, driving and curfew restrictions, finding no ex post facto violation. *See Cruz v. Texas Parole Div.*, 87 F. App'x 346, 2006 WL 190251 (5th Cir. 2004); *Vinyard v. Keesee*, 70 F.3d 1266, 1995 WL 696732 (5th Cir. 1995) (unpublished); *see also De La Cerda v. Dretke*, Civil No. H-05-1270, 2005 WL 2656349 (S.D. Tex. 2005) (rejecting an ex post facto challenge to the Texas Super Intensive Supervision Program ("SISP"), which authorized electronic

---

[7] This statute, enacted in 1997, authorized the creation of "electronic monitoring program" in the TDCJ parole division. *See* TEX. GOV'T CODE ANN. § 508.315 (Vernon 2004). Electronic monitoring is a condition of parole typically imposed on prisoners subject to the Super Intensive Supervision Program ("SISP") of early release. *See id.* at § 508.317.

9

monitoring and other restrictive conditions of parole). Lambeth cannot show that the electronic monitoring requirement constitutes a retroactive change to his detriment because there has been no increase in his punishment. It follows that Lambeth fails to establish a violation of the Ex Post Facto Clause.

### 3. Separation of Powers

Lambeth complains further that parole officials violated the separation-of-powers doctrine by revoking his supervised release and denying him street-time credit, resulting in an increase to his judicial sentence without a court proceeding. Separation of powers is a concept or principle that caused the drafters of the Constitution to create distinct judicial, legislative, and executive divisions of the United States government. *See* RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 3.12 at 545 (4th ed. 2007). By creating separate powers, the drafters sought to "establish a system of checks and balances between the branches of government to ensure the political independence of each branch and to prevent the accumulation of power in a single department." *Id.* Such doctrine has never been incorporated, however, and "is not enforceable against the states as a matter of federal constitutional law." *Attwell v. Nichols*, 608 F.2d 228, 230 (5th Cir. 1979) (citing *Sweezy v. New Hampshire*, 354 U.S. 234 (1957); *Dreyer v. Illinois*, 187 U.S. 71 (1902)). Therefore, even if the alleged state action violated the doctrine, Lambeth's claim concerns a matter of state law only, and presents no federal question. *See Attwell*, 608 F.2d at 230. Absent a violation of the federal constitution,

Lambeth's allegation does not warrant federal habeas corpus review. *See Estelle*, 502 U.S. at 67-68.

Further, even if Lambeth's claim were cognizable, no violation is shown. The term of Lambeth's sentence, as imposed by the state district court, has not been altered by an act of the legislature or the executive branch of state government. Although the determination of parole is an administrative or executive function in Texas, Article IV, section 11 of the Texas Constitution grants the legislature the power to establish a Board of Pardons and Paroles and to make laws effecting and affecting parole. *See Garrett v. State*, 768 S.W.2d 943, 946-47 (Tex. App. — Amarillo 1989), *aff'd*, 791 S.W.2d 137 (Tex. Crim. App. 1990). The Texas legislature has authorized the Board of Pardons and Paroles to grant or deny parole. *See* TEX. GOVT.CODE ANN. § 508.141 (Vernon 2004). A denial of parole merely requires the prisoner to serve out the remainder of his sentence; it does not lengthen the sentence imposed by the court or increase the range of imprisonment authorized by the legislature. Lambeth does not show that his sentence was increased in an improper manner or that any state agency or official took action without constitutional authorization. Accordingly, Lambeth's separation-of-powers claim is without merit. *See Gross v. Quarterman*, Civil No. H-04-0136, 2007 WL 4411755, *12 (S.D. Tex. Dec. 17, 2007) (rejecting a Texas prisoner's claim that actions take by the parole board violated principles of the separation of powers).

In conclusion, Lambeth has not demonstrated that the state court's decision to deny any of his claims was contrary to, or involved an unreasonable application of, clearly

established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Accordingly, for all of the foregoing reasons, Lambeth is not entitled to federal habeas corpus relief from the calculation of his sentence.

## III.    CERTIFICATE OF APPEALABILITY

The federal habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the

petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that jurists of reason would not debate whether the petitioner has stated a valid claim or whether any procedural ruling in this case was correct. Accordingly, a certificate of appealability will not issue in this case.

## IV. CONCLUSION AND ORDER

The federal courts are authorized to dismiss habeas corpus petitions without ordering a response where it plainly appears that the petitioner is not entitled to relief. 28 U.S.C. § 2243; Rule 4, Rules Governing Section 2254 Cases in the United States District Courts. Because the claims raised by the petitioner plainly lack merit, the petition lacks an arguable basis in law and is subject to dismissal for that reason. *See McDonald v. Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998).

Accordingly, based on the foregoing, the Court **ORDERS** as follows:

1. To the extent that it is not moot, the petitioner's motion for leave to file a limited number of copies (Doc. # 3) is **GRANTED**.

2. The federal habeas corpus petition is **DENIED** and this case is **DISMISSED** with prejudice.

3. A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED on November 5, 2008.

_____
Nancy F. Atlas
United States District Judge